**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

PASQUESI FARMS, LLC d/b/a MightyVine,

*Plaintiff,*

v.

MASTRONARDI PRODUCE LTD.

*Defendant.*

Civil Action No.

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Pasquesi Farms, LLC d/b/a MightyVine ("MightyVine"), by and through undersigned counsel, and for its Complaint against Defendant Mastronardi Produce Ltd. ("Mastronardi"), states as follows:

## PARTIES

1.      MightyVine is a limited liability company organized under the laws of Delaware with an address of 222 Centerpoint Drive, Rochelle, Illinois.  MightyVine is a tomato grower and distributor based in the Chicago area.

2.      On information and belief, Mastronardi is a Canada limited company with its headquarters located at 100 Rd 4 E Kingsville, ON, Canada, N9Y 2E5 Canada.  Mastronardi is a produce distributor, and Mastronardi distributes tomatoes in at least the Chicago area.

## NATURE OF THE CASE

3.  This is an action for (i) trademark infringement under the Lanham Act; (ii) unfair competition under the Lanham Act; (iii) trademark dilution under the Lanham Act; (iv) trademark dilution under the Illinois Trademark Registration and Protection Act, formerly the Anti-Dilution Act, 765 ILCS 1036/65 (v) common law unfair competition; (vi) violation of the

1

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505; and (vii) violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  This Court also has supplemental jurisdiction over the state law claims included herein pursuant to 28 U.S.C. § 1367, as such claims are so related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy.  In addition, the Court has subject matter jurisdiction over MightyVine's unfair competition claim under the common law of Illinois.  *See* 28 U.S.C. § 1338(b)).

5.     On information and belief, Mastronardi is doing business in the State of Illinois by making its products available for sale within and into Illinois.

6.     On information and belief, personal jurisdiction over Mastronardi is vested in this Court pursuant to one or more subsections of 735 ILCS 5/2-209(a)-(c), in that Mastronardi has, with respect to the present case, transacted business in the State of Illinois and/or entered into contacts with people or entities residing in the State of Illinois, all commensurate with the United States and Illinois Constitutions, so as to submit itself to the jurisdiction and process of this Court.

7.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) in that, *inter alia*, the Defendants may be found in this District and a substantial part of the events giving rise to this action occurred and continues to occur in this District.

2

## FACTS RELEVANT TO ALL COUNTS

### MightyVine and its MIGHTYVINE Mark

8.     MightyVine is the owner of U.S. Trademark Reg. No. 4,996,422 for its MIGHTYVINE trademark in connection with "fresh tomatoes" in International Class 31 (the "MIGHTYVINE Mark"), a copy of which is attached as **EXHIBIT A**.

9.     MightyVine has been using the MIGHTYVINE Mark in U.S. commerce since as early as June 2015, and prominently displays its MIGHTYVINE Mark on its products as shown below:



10.     MightyVine sells its fresh tomatoes under the MIGHTYVINE Mark to a large number of grocery stores and food retailers in and around Chicago and throughout the Midwest, including Costco, Whole Foods Market, Walmart, Eataly, and Jewel-Osco.

11.     Beyond selling its MIGHTYVINE tomatoes in grocery stores and food retailers, MightyVine also sells its tomatoes to more than 200 restaurants in the Chicago area, including many successful, well-known restaurant and hospitality groups, such as the restaurants run by Chef

Rick Bayless, Lettuce Entertain You Enterprises and Four Corners Tavern Group, among others. MightyVine's products are heavily featured by such restaurants to entice potential customers, including through use of the MIGHTYVINE Mark on in-store and sidewalk signs, etc. As one example, travelers who pass through Chicago's O'Hare Airport regularly encounter the MIGHTYVINE Mark at Rick Bayless's TORTAS Frontera restaurants in O'Hare's Terminal 1, Terminal 3, and Terminal 5, as evidenced by the image shown below:



12.     As another example, Chef Rick Bayless tweeted about MightyVine's tomatoes in April 2018, stating, "It is so wonderful to have these incredibly beautiful and flavorful local tomatoes off season in our restaurant kitchens." *See* attached **EXHIBIT B**.

13.     Frontera Grill in Chicago also features MightyVine's tomatoes on its menu, as evidenced by the image shown below:



14.   Xoco, another Chicago restaurant, also refers to "local MightyVine tomato" on its menu:



15.   As yet another example, Gaijin, a restaurant in Chicago specifically refers to the tomatoes that it serves as "MIGHTYVINE tomatoes" on its menu:

## STARTERS

| | | | | | | |
|---|---|---|---|---|---|---|
| **KOMBU** | 5 | **SOUP** | 6 | **VEGGIE KOROKKE** | 5 |
| kombu / marinated seasonal vegetables | | spicy miso / seasonal vegetables / tofu | | mushroom / rice / curry / Mighty Vine tomatoes / daikon pickle / tonkatsu sauce | |
| **CRUDITÉ** | 6 | **GREENS** | 11 | **BEEF KOROKKE** | 7 |
| crudité / black garlic miso / salt / citrus | | Werp Farms greens / sesame-yuzu vinaigrette / cucumbers / carrots / crispy rice | | beef / potato / curry / Mighty Vine tomatoes / daikon pickle / tonkatsu sauce | |

16.     As another example, Farmhouse Tavern in Chicago, which describes itself as "Honest to the Heartland. Responsible. Local. Sustainable. Social." (https://farmhousechicago.com/) also identifies its tomatoes on its menu as "MightyVine Tomato":



17.     Summer House, another restaurant in Chicago, lists "Mighty Vine Tomatoes" as one of its farms from which it sources ingredients:

SUMMER HOUSE    RESERVE  MENU  EVENTS  PRIVATE PARTIES  CATERING  GALLERY  CONTACT  ORDER ONLINE    CHICAGO  CHANGE LOCATION

OUR FARMS: Mighty Vine Tomatoes • Revol Greens • Mick Klug Farm • Brandt Beef • Seedling Farm and Orchard • Gerber's Amish Farm

18.     As another example, Hannah's Bretzel, which has several locations in Chicago, identifies the tomatoes it serves as "Mighty Vine tomatoes" on its menu at (https://www.hannahsbretzel.com/food/):



19.     Michael Jordan's Steak House, a luxury steakhouse in Chicago, also identifies the tomatoes that it serves as "mighty vine tomatoes":



20.     As yet another example, LYFE Kitchen, which also has several locations in Chicago, has cleverly named its kale caesar salad, which contains "Mighty Vine tomatoes," as its "Mighty Kale Caesar":



21.     In 2016, the Chicago Tribune reported that MightyVine was doubling its tomato operations within its first year to meet rising demand.  In 2018, the Chicago Tribune reported for a second time that MightyVine was again doubling its operations to meet growing demand from retailers like Costco, Walmart, and Jewel-Osco.  In 2019, the Chicago Tribune published yet another article about MightyVine's expansion as demand for its tomatoes "keeps growing."  *See* articles attached as **EXHIBIT C**.

22.     The MIGHTYVINE Mark represents substantial and valuable goodwill that MightyVine has earned through years of hard work.

23.     When third parties refer to MightyVine or to the MIGHTYVINE Mark, they often do so by emphasizing the leading element of the mark, namely, "MIGHTY." For example, third parties have published Internet articles and posts about MightyVine with headlines like "MightyVine Is Mighty Good" and "Mighty Fine Tomatoes," with the articles and posts declaring

8

"you're in for a mighty good surprise," or "I guarantee that you will eat them and declare that they are 'mighty fine tomatoes.'"  *See* articles attached as **EXHIBIT D**.

24.     By virtue of extensive advertising and promotion, a substantial number and proportion of consumers in and around Chicago, as well as in the greater Midwest, have come to associate the MIGHTYVINE Mark, and the leading "MIGHTY" element of that mark, solely and exclusively with MightyVine and its tomatoes.

25.     Due to its longstanding and extensive use of the MIGHTYVINE Mark and the exceptionally high quality of its tomatoes, and news coverage regarding same, MightyVine has achieved a degree of fame in and around at least Chicago and many other Midwest markets.

26.     Upon information and belief, no other entity has used the word "MIGHTY" in connection with tomatoes offered for sale in retail grocery stores.

## Mastronardi's Infringing Activities

27.     Upon information and belief, Mastronardi has been using the words "TINY MIGHTY TOMATOES" in connection with its offering of certain tomato products, particularly its "Sprinkles" tomato product (the "TINY MIGHTY TOMATOES mark").

28.     Upon information and belief, Mastronardi has also submitted a federal trademark application to USPTO for the TINY MIGHTY TOMATOES mark (U.S. Serial No. 87866544).  Further, Mastronardi has doubled down on its co-opting of MightyVine's trademark rights by expanding its usage of the "TINY MIGHTY" mark to include TINY MIGHTY CUCUMBERS.

29.     Upon information and belief, Mastronardi was aware of MightyVine's MIGHTYVINE Mark at the time it first began using the TINY MIGHTY TOMATOES mark.

30.     Upon information and belief, Mastronardi intentionally adopted the term "MIGHTY" in order to create confusion, and to benefit from and ride off the goodwill of the MIGHTYVINE Mark.

31.     Upon information and belief, the prominent use of the TINY MIGHTY TOMATOES mark by Mastronardi in this manner appears to be made with the intent to trade on the goodwill associated with the MIGHTYVINE Mark.

32.     Mastronardi's use of the word "MIGHTY" among other descriptive and generic wording creates the false impression that Mastronardi's tomato products originate from MightyVine, or that MightyVine is somehow connected or associated with Mastronardi's tomato products, so as to deceive customers or to cause confusion or mistake as to the origin or affiliation of Mastronardi's and MightyVine's tomatoes.

33.     Mastronardi's use is also likely to dilute the distinctive quality of MightyVine's MIGHTYVINE Mark.  The attempted association of MightyVine's MIGHTYVINE Mark with Mastronardi's tomato products is likely to blur and/or tarnish the distinctive character of the MIGHTYVINE Mark.

34.     Mastronardi prominently displays the infringing TINY MIGHTY TOMATOES mark on its tomato products, as shown below:



35.     On April 6, 2018, Mastronardi filed U.S. Trademark Application Serial No. 87/866,544 for the mark TINY MIGHTY TOMATOES covering the following identification of goods: "Fresh fruit; fresh fruit and vegetables; fresh peppers; fresh vegetables; raw peppers; unprocessed peppers (based on 44(d) Priority Application) Fresh fruit; Fresh fruit and vegetables; Fresh peppers; Fresh vegetables; Raw peppers; Unprocessed peppers" in International Class 31. According to that application, Mastronardi began using the infringing TINY MIGHTY TOMATOES mark in commerce as early as October 20, 2018.  A copy of that application, including Mastronardi's Amendment to Allege Use, is attached as **EXHIBIT E**.

36.     Mastronardi's infringing TINY MIGHTY TOMATOES mark is confusingly similar to MightyVine's MIGHTYVINE Mark in appearance, sound, meaning and commercial impression.

37.     Moreover, the dominant element of the TINY MIGHTY TOMATOES mark is the word "MIGHTY."  First, the word "TOMATOES" is generic of the type of product that is being sold under that mark, and thus that word is entitled to very little weight in comparing the overall commercial impression of the two marks. Second, the word "TINY" is descriptive of the

products Mastronardi sells because Mastronardi itself has described its products at issue as "a micro-grape tomato" and "smaller-than-mini cucumbers." *See* articles attached as **EXHIBIT F.**

38.     Mastronardi's continued use of the infringing TINY MIGHTY TOMATOES mark with tomatoes is likely to cause confusion, mistake or falsely suggest that Mastronardi's tomato products are related to, sponsored by, or affiliated with MightyVine's tomato products. Likewise, Mastronardi's continued use of the infringing TINY MIGHTY CUCUMBERS mark with fresh cucumbers, which have a strong commercial relationship with fresh tomatoes, is likely to cause confusion, mistake or falsely suggest that Mastronardi's products are related to, affiliated with, or an outgrowth of, MightyVine's products.

39.     Mastronardi's use of the TINY MIGHTY TOMATOES mark trades off the goodwill and brand reputation of MightyVine's MIGHTYVINE Mark.

40.     Mastronardi's conduct in using and seeking to register the infringing TINY MIGHTY TOMATOES mark is likely to cause confusion in the marketplace among purchasers and prospective purchasers of MightyVine's goods.  MightyVine has been damaged and is likely to be further damaged by Mastronardi's wrongful use of the infringing TINY MIGHTY TOMATOES mark in that the relevant purchasing public has been and is likely to continue to be induced into purchasing Mastronardi's products in the erroneous belief that those products originate or emanate from, or are somehow endorsed, sponsored, or approved by MightyVine, which they are not.

### MightyVine's Cease and Desist Letters to Defendant

41.     Upon learning of Mastronardi's use and application for the infringing TINY MIGHTY TOMATOES mark, MightyVine sent a letter to Mastronardi dated June 12, 2019

demanding that Mastronardi immediately cease and desist all further use of the infringing TINY MIGHTY TOMATOES mark.

42.    On June 19, 2019, Mastronardi responded to MightyVine's letter, and declined MightyVine's demands.

43.    MightyVine sent Mastronardi a second letter dated September 5, 2019 again demanding that Mastronardi cease and desist from all further use of the infringing TINY MIGHTY TOMATOES mark.

44.    Mastronardi failed to respond to MightyVine's second letter and has failed to comply with MightyVine's demand that it cease using the infringing TINY MIGHTY TOMATOES mark.  Mastronardi is thus engaging in unlawful activity and acting in bad faith, with a willful and deliberate intent to deceive and cause confusion among consumers and to injure MightyVine as well as MightyVine's reputation and goodwill.

## COUNT I
## TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

45.    MightyVine realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

46.    Mastronardi's use of a confusingly similar imitation of MightyVine's MIGHTYVINE Mark is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Mastronardi's goods originate from or distributed by MightyVine, or are associated or connected with MightyVine, or have the sponsorship, endorsement, or approval of MightyVine.

47.    Mastronardi's infringing TINY MIGHTY TOMATOES mark is confusingly similar to MightyVine's federally registered mark in violation of 15 U.S.C. § 1114.  Mastronardi's activities are causing and are likely to cause confusion and deceive members of the trade and

public, and are injuring and are likely to further injure MightyVine's goodwill and reputation as symbolized by MightyVine's MIGHTYVINE Mark. Likewise, Mastronardi's continued use of the infringing TINY MIGHTY CUCUMBERS marks with cucumbers is also causing and likely to cause confusion and deceive members of the trade and public, and are injuring and are likely to further injure MightyVine's goodwill and reputation as symbolized by MightyVine's MIGHTYVINE Mark. MightyVine has no adequate remedy at law for these injuries to its goodwill and reputation.

48.     Mastronardi's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with MightyVine's MIGHTYVINE Mark, to MightyVine's great and irreparable harm.

49.     Mastronardi has caused and is likely to continue causing substantial injury to the public and to MightyVine.

## COUNT II
## FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))

50.     MightyVine realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

51.     Mastronardi's use of a confusingly similar imitation of MightyVine's MIGHTYVINE Mark has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Mastronardi's goods originate from or are distributed by MightyVine, or are affiliated, connected, or associated with MightyVine or have the sponsorship, endorsement, or approval of MightyVine.

52.     Mastronardi has created a false association and false designation of origin with its goods in violation of 15 U.S.C. § 1125(a). Mastronardi's activities have caused and are likely to continue to cause a likelihood of confusion and deception of members of the trade and public,

and injury to MightyVine's goodwill and reputation as symbolized by MightyVine's MIGHTYVINE Mark, for which MightyVine has no adequate remedy at law.

53.     Mastronardi's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with MightyVine's MIGHTYVINE Mark, to the great and irreparable injury of MightyVine.

54.     Mastronardi's conduct has caused, and is likely to continue causing, substantial injury to the public and to MightyVine.

## COUNT III
## FEDERAL TRADEMARK DILUTION (15 U.S.C. § 1125(c))

55.     MightyVine realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

56.     MightyVine has exclusively and continuously promoted and used the MIGHTYVINE Mark.  The MIGHTYVINE Mark was a well-known and famous symbol of MightyVine's products before Mastronardi began using the infringing TINY MIGHTY TOMATOES and/or TINY MIGHTY CUCUMBERS marks.

57.     Mastronardi's actions are diluting and destroying the distinctiveness of MightyVine's strong, distinctive, and famous MIGHTYVINE Mark by eroding the public's exclusive identification of the MIGHTYVINE Mark with MightyVine, tarnishing and degrading the positive associations and prestigious connotations of the mark, and otherwise lessening the capacity of the mark to identify and distinguish MightyVine's goods.

58.     Mastronardi's actions are greatly diminishing and blurring the source-identifying capability of the MIGHTYVINE Mark through its marketing, advertising, and sales of unlicensed products.

59.     Mastronardi's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with MightyVine's MIGHTYVINE Mark or to cause dilution of the mark, to the great and irreparable injury of MightyVine.

60.     As a result of Mastronardi's conduct and actions, MightyVine's distinctive MIGHTYVINE Mark has been diluted, blurred, and diminished. Mastronardi has caused and will continue to cause irreparable injury to MightyVine's goodwill and business reputations, and dilution of the distinctiveness and value of MightyVine's famous and distinctive MIGHTYVINE Mark in violation of 15 U.S.C. § 1125(c).

## COUNT IV
## TRADEMARK DILUTION UNDER THE ILLINOIS TRADEMARK REGISTRATION AND PROTECTION ACT, FORMERLY THE ANTI-DILUTION ACT, 765 ILCS 1036/65

61.     MightyVine realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

62.     This Count arises under the Illinois Trademark Registration and Protection Act, formerly known colloquially as the "Anti-Dilution Act," 765 ILCS 1036/65.

63.     Through MightyVine's longstanding use of the MIGHTYVINE Mark in commerce in the State of Illinois, the mark has become impressed upon the minds of the relevant trade and consuming public as identifying MightyVine. The MIGHTYVINE Mark has become a well-known and famous symbol of MightyVine's products in the State of Illinois.

64.     Mastronardi's actions are diluting and destroying the distinctiveness of MightyVine's strong, distinctive, and famous MIGHTYVINE Mark by eroding the public's exclusive identification of the MIGHTYVINE Mark with MightyVine, tarnishing and degrading the positive associations and prestigious connotations of the mark, and otherwise lessening the capacity of the mark to identify and distinguish MightyVine's goods.

65.     Mastronardi's actions are greatly diminishing and blurring the source-identifying capability of the MIGHTYVINE Mark through its marketing, advertising, and sales of unlicensed products.

66.     Mastronardi's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with MightyVine's MIGHTYVINE Mark or to cause dilution of the mark, to the great and irreparable injury of MightyVine.

67.     In addition to being entitled to injunctive relief under 765 ILCS 1036/65 for trademark dilution, MightyVine is entitled to the remedies listed in 765 ILCS 1036/70, including "judgment for an amount not to exceed 3 times the profits and damages or reasonable attorneys' fees of the prevailing party, or both," because Mastronardi "willfully intended to trade on [MightyVine's] reputation or to cause dilution of" the MIGHTYVINE Mark.

68.     As a result of Mastronardi's conduct and actions, MightyVine's distinctive MIGHTYVINE Mark has been diluted, blurred, and diminished.  Mastronardi has caused and will continue to cause irreparable injury to MightyVine's goodwill and business reputations, and dilution of the distinctiveness and value of MightyVine's famous and distinctive MIGHTYVINE Mark in violation of 15 U.S.C. § 1125(c).

**COUNT V**
**COMMON LAW UNFAIR COMPETITION**

69.     MightyVine realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

70.     This Count arises under an action for damages and injunctive relief pursuant to acts of unfair competition under the common law of the State of Illinois.

71.     Through MightyVine's longstanding use of the MIGHTYVINE Mark in commerce, the mark has become impressed upon the minds of the relevant trade and consuming public as identifying MightyVine.

72.     MightyVine has built a large and valuable business in its use of the MIGHTYVINE Mark, and the goodwill associated with MightyVine, and MightyVine alone, is of great value to MightyVine.

73.     Mastronardi has used, and is continuing to use, the infringing TINY MIGHTY TOMATOES and TINY MIGHTY CUCUMBERS marks in connection with its manufacture, distribution, and sale of fresh tomatoes and cucumbers.

74.     Mastronardi's unauthorized use of the infringing TINY MIGHTY TOMATOES and TINY MIGHTY CUCUMBERS marks is likely to cause confusion in the marketplace between MightyVine and Mastronardi.

75.     Mastronardi's misappropriation is in willful and wanton disregard of MightyVine's rights in and to MIGHTYVINE Mark, and without the consent of MightyVine.

**COUNT VI**
**ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**UNDER 815 ILCS 505**

76.     MightyVine realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

77.     On information and belief, Mastronardi's above-described acts have been made with the intent of causing a likelihood of confusion, or of a misunderstanding as to the source, ownership and/or association with MightyVine.

78.     Mastronardi's acts constitute a violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 insofar as it:

(a)    causes likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of goods;

(b)    causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another; and

(c)    represents that goods have approval, characteristics, approval, status, affiliation or connection that they do not have.

79.    Upon information and belief, Mastronardi has willfully engaged in the deceptive trade practices complained of herein.

80.    Mastronardi's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to MightyVine.

81.    Mastronardi's statutory violations and other wrongful acts have injured and threaten to continue to injure MightyVine, including loss of customers, dilution of goodwill, confusion of existing and potential customers, injury to its reputation, and diminution in the value of its works.

82.    Mastronardi has unjustly gained revenue and profits by virtue of its wrongful acts that it otherwise would not have obtained and to which it is not entitled.

83.    MightyVine has also been injured and will continue to incur attorneys' fees and costs in bringing the present action.

84.    MightyVine has no adequate remedy at law for the wrongful actions of Mastronardi.

**COUNT VII**
**ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT UNDER 815 ILCS 510**

85.    MightyVine realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

86.     On information and belief, Mastronardi's above-described acts have been made with the intent of causing a likelihood of confusion, or of a misunderstanding as to the source, ownership and/or association with MightyVine.

87.     Mastronardi's acts constitute a violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510 insofar as it:

        (a)    causes likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of goods;

        (b)    causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another; and

        (c)    represents that goods have approval, characteristics, approval, status, affiliation or connection that they do not have.

88.     On information and belief, Mastronardi has willfully engaged in the deceptive trade practices complained of herein.

89.     Mastronardi's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to MightyVine.

90.     Mastronardi's statutory violations and other wrongful acts have injured and threaten to continue to injure MightyVine, including through loss of customers, loss of distinctiveness, dilution of goodwill, confusion of existing and potential customers, injury to its reputation, and diminution in the value of its mark.

91.     Mastronardi has unjustly gained revenue and profits by virtue of its wrongful acts that it otherwise would not have obtained and to which it is not entitled.

92.     MightyVine has no adequate remedy at law for the wrongful actions of Mastronardi.

## RELIEF REQUESTED

WHEREFORE, Plaintiff MightyVine prays for judgment against Defendant Mastronardi as follows:

(a)     Under 15 U.S.C. § 1116, Mastronardi and all those acting in concert with it be permanently enjoined from:

     (i)     Using the infringing TINY MIGHTY TOMATOES mark and any other confusingly similar mark, to advertise, offer for sale and/or sell tomatoes or any other goods or services that may reasonably be encompassed by the MIGHTYVINE Mark;

     (ii)     Using any service mark, trademark, trade name, trade dress, word, domain name, number, abbreviation, design, color, arrangement, collocation, or any combination thereof, which would imitate, resemble, suggest or dilute the MIGHTYVINE Mark;

     (iii)     Otherwise infringing the MIGHTYVINE Mark;

     (iv)     Unfairly competing with MightyVine or otherwise injuring its business reputation in any manner;

(b)     Under 15 U.S.C. § 1117, Mastronardi be ordered to pay to MightyVine damages in an amount sufficient to compensate it fairly for the injuries it has sustained and will sustain, together with all profits that are attributable to Mastronardi's infringing mark, and further that the amount of the monetary award be trebled in view of the willful and deliberate nature of Mastronardi's unlawful conduct;

(c)     Under 15 U.S.C. § 1117, that the case be deemed to be exceptional, in view of the willful and deliberate nature of Mastronardi's unlawful conduct, and that Mastronardi be ordered to pay MightyVine its attorneys' fees and costs;

(d)     Under 15 U.S.C. § 1118, Mastronardi be directed to deliver up for destruction all advertisements, labels, signs, prints, packages, and all other materials in its possession or under its control bearing the infringing TINY MIGHTY TOMATOES mark, as well as materials bearing the mark TINY MIGHTY CUCUMBERS;

(e)     Under Illinois state law, that Mastronardi be enjoined from any further use of the word "MIGHTY" or any marks confusingly similar to MIGHTYVINE as diluting and/or likely to cause confusion with the MIGHTYVINE Mark, and that Mastronardi be ordered to pay MightyVine damages in an amount sufficient to compensate it fairly for the injuries it has sustained and will sustain, together with all profits that are attributable to Mastronardi's infringing mark, and that such awards be trebled in view of Mastronardi's willful and bad faith conduct;

(f)     That Mastronardi withdraw its trademark application for the infringing TINY MIGHTY TOMATOES mark; and

(g)     Any further relief as this Court may deem equitable and proper.

## JURY DEMAND

Plaintiff MightyVine hereby demands a jury trial as to all issues so triable.


Respectfully submitted,

Dated: January 14, 2020                              /s/ Barry R. Horwitz

                                                     Barry R. Horwitz
                                                     Jonathan H. Claydon
                                                     GREENBERG TRAURIG LLP
                                                     77 W. Wacker Drive, Suite 3100
                                                     Chicago, Illinois 60610
                                                     (312) 456 8400 (p)
                                                     (312) 456 8434 (f)
                                                     horwitzb@gtlaw.com
                                                     claydonj@gtlaw.com


                                                     ATTORNEYS FOR PLAINTIFF
                                                     PASQUESI FARMS, LLC D/B/A
                                                     MIGHTYVINE